UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JADEN THOMAS,

     Plaintiff,

v.

CODY McCABE and KEVIN DOYLE,

     Defendants.

Case No. 23-10398
Honorable Laurie J. Michelson

___

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS [11]**

___

Jaden Thomas was stopped by Officers Cody McCabe and Kevin Doyle after pulling out of a gas station. The officers claimed Thomas had failed to come to a complete stop before entering traffic. But Thomas insisted he did make a complete stop and was frustrated with the officers for pulling him over. Ultimately, Thomas was arrested for failing to produce a driver's license and charged with resisting arrest for attempting to prevent McCabe from handcuffing him. The charges were eventually dropped, however, after the state court found the traffic stop unlawful and ordered the suppression of evidence that Thomas resisted arrest. Now Thomas seeks damages under 42 U.S.C. § 1983 for false arrest and malicious prosecution.

Irrespective of the lawfulness of the stop, the officers believe Thomas' post-stop conduct gave them probable cause for an arrest and a subsequent charge of resisting arrest. So they have moved to dismiss his complaint for failure to state a claim. For the reasons that follow, the motion is GRANTED.

# I.

Many facts of the underlying traffic stop are not in dispute. (*See* ECF No. 1-2.) And any disputes that exist are resolved in Thomas' favor on Defendants' 12(c) motion to dismiss. *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012); *Frazier v. City of Detroit*, No. 21-11193, 2022 WL 1978736, at *1 (E.D. Mich. June 6, 2022).

Officers McCabe and Doyle[1] pulled Thomas over after witnessing him exit a gas station, allegedly without coming to a complete stop. (ECF No. 1-1, PageID.13.) McCabe asked Thomas for his driver's license, but Thomas "could not produce" it. (*Id.*) McCabe then told Thomas to get out of his car, which Thomas did. (*Id.*) McCabe attempted to handcuff Thomas, but he resisted. (*Id.*) Doyle then intervened and assisted McCabe in handcuffing Thomas. (*Id.*) Thomas was arrested and charged with the felony of assaulting, resisting, or obstructing a police officer in violation of Michigan Compiled Laws § 750.81(d)(1). (*Id.*)

At a preliminary examination, McCabe testified that he pulled Thomas over for failing to come to a complete stop when exiting the gas station, and the matter was bound over to circuit court (*Id.*)

But after the preliminary examination, Thomas obtained two videos—Doyle's dashcam recording and surveillance footage from the gas station—and the surveillance video showed that Thomas did come to a complete stop before exiting the

---

[1] Thomas first named Edward Doyle, though the proper defendant was Kevin Doyle. (*See* ECF No. 1-1, PageID.11.) The caption was later changed to correct this mistake. (*See* ECF No. 13.)

gas station. (*Id.*; *see also* Video Ex. B, Gas Station Video, 0:48–0:58.)[2] Based on this evidence, Thomas filed a motion to suppress. (ECF No. 1-1, PageID.13.) The state court granted the motion, finding that because the "assaulting, resisting, or obstructing a police officer charge was based upon a confrontation between Mr. Thomas and Trooper McCabe after an illegal traffic stop, any evidence that Mr. Thomas assaulted, resisted, or obstructed a police officer must be suppressed." (*Id.* at PageID.19–20.) After this ruling, all criminal charges against Thomas were dismissed. (*Id.* at PageID.14.)

Subsequently, Thomas filed suit in the Wayne County Circuit Court claiming that McCabe and Doyle violated his Fourth Amendment rights to be free from false arrest and malicious prosecution. (*Id.* at PageID.11–17.) Defendants answered the complaint (ECF No. 1-2, PageID.21–31) and removed the case to federal court (ECF No. 1). They then moved for judgment on the pleadings, arguing that the complaint fails to plausibly allege a constitutional violation and that they are entitled to qualified immunity. (ECF No. 11.) The motion is fully briefed. (ECF Nos. 16, 19.) Given the clear briefing and record, the Court considers it without further argument. *See* E.D. Mich. LR 7.1(f).

---

[2] As will be discussed more fully, the Court considers this video evidence without converting the motion to one for summary judgment. Defendants agree, for the purposes of this motion only, that the gas station surveillance footage shows Thomas making a complete stop. (ECF No. 11, PageID.100.) Also, on a motion for judgment on the pleadings, the Court must consider the facts in the light most favorable to the non-moving party, in this case Thomas. *See Heinrich*, 668 F.3d at 403*; Ashcroft v. Iqbal*, 556 U.S. at 678. Accordingly, the Court assumes without deciding that the video shows Thomas' complete stop.

## II.

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In deciding Rule 12(c) motions, courts use the standard governing Rule 12(b)(6) motions. *See Heinrich*, 668 F.3d at 403. As such, "this Court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Although courts are typically limited to considering the pleadings on a motion to dismiss for failure to state a claim, the court may "take judicial notice of matters of public record, orders, other court proceedings, items appearing in the record of the case, and exhibits attached to the complaint" without converting the motion into one for summary judgment. *See, e.g.*, *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023); *Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC*, 46 F.4th 454, 457 (6th Cir. 2022). "Courts may consider public records for the truth of the statements contained within them only when the 'contents prove facts whose accuracy cannot reasonably be questioned.'" *Gaal*, 58 F.4th at 883 (citation omitted.)

This rule applies to videos as well as documents. The Sixth Circuit has approved the use of video evidence at the motion to dismiss stage where the videos do not invite conclusions properly left to the jury. *See Bailey v. City of Ann Arbor*, 860

4

F.3d 382, 386 (6th Cir. 2017) (affirming the admittance of body camera and dash camera footage at the motion to dismiss stage where the videos "cover[ed] the whole [incident]" and "'utterly discredit[ed]' [the plaintiff's] version of events" (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007))). This Court has likewise relied on dashcam and bodycam video evidence "where it covers the entire incident at issue" and "both parties urge [the Court] to consider" it. *Reynolds v. City of Ferndale*, 545 F. Supp. 3d 533, 538 (E.D. Mich. 2021), *aff'd sub nom. Reynolds v. Szczesniak*, No. 21-2732, 2022 WL 3500191 (6th Cir. Aug. 18, 2022). It follows that the Court could also consider video evidence in considering a motion for judgment on the pleadings, since both are governed by the same standards.

Here, both parties urge the Court to consider dashcam and surveillance video evidence. The parties mention both videos in their pleadings. (*See* ECF No. 1-1, PageID.13–14; ECF No. 1-2, PageID.30.) They also encourage the Court to consider the videos in their briefs regarding this motion. (ECF No. 11, PageID.98–100; ECF No. 16, PageID.133.) Additionally, the dashcam video covers the entire incident, and the surveillance video was central to the state court's holding in Thomas' criminal prosecution. (ECF No. 1-1, PageID.19–20); *see also Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("[C]ourt[s] may take judicial notice of other court proceedings without converting the motion into one for summary judgment"). Because the surveillance video was part of the motion to suppress and because both videos were referenced in and integral to the § 1983 complaint here, they are

appropriate for consideration without converting the motion to one for summary judgment. *See Gaal*, 58 F.4th at 883.

Lastly, the standard for qualified immunity. "Qualified immunity shields government officials from civil liability in the performance of their duties so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent and those who knowingly violate the law." *Id.*; *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). In assessing qualified immunity claims, courts use a two-step analysis, asking (1) whether a constitutional right has been violated and (2) whether that right was clearly established at the time the alleged violation occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A plaintiff bears the burden of demonstrating both prongs. *See Hart v. Hillsdale County*, 973 F.3d 627, 635 (6th Cir. 2020).

### III.

Though the Court may begin with either, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), it will start with the first prong of the qualified immunity analysis: whether a constitutional violation has been committed. Thomas claims his Fourth Amendment rights were violated by his false arrest (ECF No. 1-1, PageID.14–15) and malicious prosecution (*id*. at PageID.15–16). The Court addresses each in turn.

## A.

To state a claim for false arrest, a plaintiff must show he was arrested without probable cause. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer had probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *Hardesty v. City of Ecorse*, 623 F. Supp. 2d 855, 862 (E.D. Mich. 2009). "Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge 'were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *United States v. Pearce*, 531 F.3d 374, 380–81 (6th Cir. 2008) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).

Thomas was arrested after failing to produce a driver's license. He admits as much in his complaint. (ECF No. 1-1, PageID.13.) Under Michigan law, a driver's license must be in a driver's "immediate possession at all times when operating a motor vehicle" and must be displayed "upon demand of any police officer, who shall identify himself or herself as such." Mich. Comp. Law § 257.311.

Thomas claims, however, that because this arrest occurred only after an unlawful traffic stop, the arrest is also unlawful. (*Id.* at PageID.14–15.) The issue then is whether the unlawful stop taints the lawfulness of the arrest.

Though evidence found pursuant to an unlawful stop may be suppressed in the context of a criminal case as "fruit of the poisonous tree," as happened here, *see Wong Sun v. United States,* 371 U.S. 471, 488 (1963), courts have traditionally declined to extend the Fourth Amendment exclusionary rule to civil proceedings, *see United States v. Janis,* 428 U.S. 433 (1976); *Chatman v. Slagle*, 107 F.3d 380, 382 (6th Cir. 1997); *Backos v. United States,* Nos. 7-70615, 7-71018, 7-70897, 1978 U.S. Dist. LEXIS 7116 (E.D. Mich. Dec. 20, 1978). And the Sixth Circuit has declined to extend the doctrine of inevitable discovery, a doctrine related to the exclusionary rule, to § 1983 cases. *See Evans v. Vinson*, 427 F. App'x 437, 444 (6th Cir. 2011); *Chatman v. Slagle*, 107 F.3d 380, 382 (6th Cir. 1997) ("[T]he reasoning which supports the use of the Fourth Amendment exclusionary rule and the related inevitable discovery doctrine in criminal cases does not apply in civil rights actions.").

While the Sixth Circuit has not ruled on whether the fruit of the poisonous tree doctrine applies in § 1983 cases, other circuits have found it inapplicable. *See Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) ("[T]he fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant."); *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016) ("We now join our sister circuits and hold that the exclusionary rule does not apply in a civil suit against police officers. The cost of applying the exclusionary rule in this context is significant: officers could be forced to pay damages based on an overly truncated version of the evidence. And the deterrence benefits are miniscule. Police officers are already deterred from violating the Fourth Amendment because the evidence that they find during an illegal search

8

or seizure cannot be used in a criminal prosecution—the primary 'concern and duty' of the police."). Numerous district courts within this circuit have followed suit. *See, e.g., Cobb v. City of Columbus*, No. C-2-99-579, 2000 U.S. Dist. LEXIS 22065, at *14 (S.D. Ohio Oct. 20, 2000) (finding "the Second Circuit's decision in *Townes* to be persuasive"); *Brown v. Slaubaugh*, No. 18-P762, 2023 U.S. Dist. LEXIS 31882, at *21 (W.D. Ky. Feb. 27, 2023) (citing cases); *Davis v. Baker*, No. 19-107, 2019 U.S. Dist. LEXIS 201019, at *19, 21 (E.D. Ky. Nov. 18, 2019) ("Plaintiff's only argument could be that the search was unconstitutional because it originated from an unconstitutional traffic stop. But that would be an improper application of the fruit of the poisonous tree doctrine."). In other words, courts may consider evidence that would be inadmissible in a criminal context when determining whether probable cause existed for an arrest or prosecution at issue in a § 1983 suit. *See, e.g., Shakleford v. Hensley*, No. 12-194, 2013 U.S. Dist. LEXIS 136183, at *21 (E.D. Ky. Sept. 24, 2013) ("[E]ven assuming [the officer's] search of Shakleford's home [was] illegal, the fruit of that search, the Brolin shotgun, may be properly considered to determine whether the prosecution against Shakleford was initiated without probable cause sufficient for him to make out his Section 1983 claims for malicious prosecution."); *Howell v. Ohio State Highway Patrol Subdivision*, No. 18-510, 2019 U.S. Dist. LEXIS 206931, at *18 (S.D. Ohio Dec. 2, 2019) (finding that, on a motion for summary judgment, the fact that evidence that led the officer to charge plaintiff "was excluded by the state court during criminal proceedings d[id] not prohibit th[e]

Court from determining that the prosecution was supported by probable cause in this entirely separate civil proceeding").

Furthermore, the Sixth Circuit has indicated that in cases challenging successive steps of state action—such as stop, search, arrest, then prosecution—each step needs to be evaluated separately. *Turk v. Comerford*, 488 F. App'x 933, 944 (6th Cir. 2012) (holding that, where officers' entry into a house clearly violated Fourth Amendment law, the subsequent search was still "subject to independent Fourth Amendment analysis"). The lack of probable cause to stop and search someone does not vitiate probable cause to arrest that is discovered after the unlawful stop. *See Townes*, 176 F.3d at 149; *Martin v. Coyt*, No. 10-00176, 2012 U.S. Dist. LEXIS 61997, at *36–37 (W.D. Ky. May 3, 2012); *Phelps v. City of Akron*, No. 04-2490, 2006 U.S. Dist. LEXIS 74539, at *10 (N.D. Ohio Oct. 13, 2006).

So Thomas' stop and arrest must be assessed separately. Thomas' initial stop was not supported by probable cause. The surveillance video shows him coming to a complete stop (Video Ex. B, Gas Station Video, 0:48–0:58) and the state court granted Thomas' motion to suppress for that reason (ECF No. 1-1, PageID.19).

But after Thomas was stopped, he failed to produce a driver's license, which is an arrestable offense. *People v. Ethington*, No. 211449, 2000 Mich. App. LEXIS 2616, at *3 (Mich. Ct. App. Jan. 28, 2000) (per curiam) (citing *People v. McMaster*, 398 N.W.2d 469, 473 (Mich. Ct. App. 1986) (per curiam)). "An offense takes place . . . when a driver fails to produce the requested identification within a reasonable time under the circumstances." *Akima v. Peca*, 85 F.4th 416, 424 (6th Cir. 2023).

The dashcam video makes clear this was the basis for the arrest. As McCabe and Doyle were handcuffing him, Thomas said he was doing nothing wrong, and Doyle yelled in response, "he's asking you for your license and you're not giving it up!" (Video Ex. A, In-Car Video, 2:35–2:38.) Thomas reiterated that he did not have his license and Doyle responded, "You have to produce a license." (*Id.* at 2:38–2:45.) Later, McCabe explained that he stopped Thomas for failing to come to a complete stop when exiting the gas station but assured Thomas he would not issue a ticket for that. (*Id.* at 3:40–4:08.) McCabe then asked Thomas again if he had identification with him or if he had a valid driver's license at all. (*Id.* at 4:09–4:16.) Thomas admitted he did not have a valid driver's license. (*Id.*) After some unrelated questioning, Thomas was placed in the back of Doyle's car and Doyle informed Thomas they were taking him to the station. (*Id.* at 42:42–45:34.) Thomas asked why and Doyle responded, "You can't drive without a license. We gotta take your picture for that." (*Id.* at 45:29–45:51.)

Thus, McCabe and Doyle had probable cause to arrest Thomas. And this precludes Thomas' false arrest claim. The unlawfulness of the initial stop does not vitiate the lawfulness of the arrest in a civil § 1983 proceeding.[3]

---

[3] Although the parties spend much of their briefs discussing whether the arrest and prosecution were attenuated from the stop such that the unlawfulness of the stop had been purged (*See* ECF No. 11, PageID.108–110 (citing *Utah v. Strieff*, 579 U.S. 232 (2016)); ECF No. 16, PageID.142–144) the fruit of the poisonous tree doctrine is inapplicable in the § 1983 context, so such a discussion is not necessary.

11

**B.**

Next, Thomas' malicious prosecution claim. Following his arrest, Thomas was ultimately charged with assaulting, resisting, or obstructing a police officer in violation of Michigan Compiled Laws § 750.81(d)(1), for allegedly resisting the officers' attempts to handcuff him. (ECF No. 1-1, PageID.13.) Thomas again seeks to rely on the lack of probable cause for the initial traffic stop to argue a lack of probable cause for his prosecution. But as already discussed, each stage of police action must be analyzed separatelyin a § 1983 proceeding, including the prosecution.

The Sixth Circuit recognizes malicious prosecution as a separate claim from false arrest, encompassing "wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006). To succeed on a malicious prosecution claim under § 1983, a plaintiff must show (1) "a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute," (2) "there was a lack of probable cause for the criminal prosecution," (3) because of the proceeding, "the plaintiff suffered a deprivation of liberty," as defined by the Fourth Amendment, "apart from the initial seizure," and (4) "the criminal proceeding must have been resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (internal citations omitted) (cleaned up). The plaintiff need not demonstrate "malice" to prevail on a malicious prosecution claim. *Id.* at 309.

While a criminal prosecution was initiated against Thomas, to prevail on the first element he must also show that McCabe and Doyle influenced or participated in

12

the decision to prosecute. To do so, he must plausibly allege that the officers' "'misstatements and falsehoods . . . extended beyond [the plaintiff's] initial arrest and ultimately influenced' the continued deprivation of [the plaintiff's] liberty beyond the initial seizure." *Frazier*, 2022 WL 1978736 at *7 (quoting *Sykes*, 625 F.3d at 316). Thomas seeks to make this showing against McCabe by alleging that McCabe testified falsely at his preliminary examination about the reason for pulling him over and that this caused his case to be bound over to circuit court. (ECF No. 1-1, PageID.13.) But Thomas makes no allegations that McCabe made any falsehoods about Thomas' resistance.

The Court need not wade further into the first element. Irrespective of McCabe's role in the decision to prosecute Thomas, the dashcam again supports a probable cause finding. Resisting arrest includes "physically struggling with, threatening or disobeying officers" as well as "refusing to move your hands for police to handcuff you, at least if that inaction is coupled with other actions of defiance." *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015). In the dashcam video, Thomas can be seen refusing to move his hands for McCabe, turning to prevent McCabe from handcuffing him, and telling McCabe to stop touching him. (Video Ex. A, In-Car Video, 2:07–2:21.) And in fact, Thomas himself admits he resisted arrest and Doyle had to assist McCabe in handcuffing him. (ECF No. 1-1, PageID.13.) So even if the initial stop lacked probable cause, Thomas' prosecution did not.

While it is true that each element of police action must be analyzed separately when it is challenged in a § 1983 lawsuit, in this case the question of prosecution

13

overlaps with the question of arrest because Thomas was prosecuted for *resisting* arrest. In Michigan, a defendant cannot be prosecuted for resisting arrest unless the underlying arrest was lawful. *See People v. Moreno*, 814 N.W.2d 624 (Mich. 2012) (holding that in Michigan, the common law right to resist an unlawful arrest was not abrogated by statute). But Thomas' arrest for failure to produce a license was lawful because it was supported by probable cause, as discussed above, so Thomas did not have a right to resist. And Thomas does not allege that any evidence was uncovered subsequent to his arrest that would indicate a lack of probable cause for his prosecution for resisting arrest. *See Sykes v. Anderson*, 625 F.3d 294, 311 (6th Cir. 2010). Accordingly, because there was probable cause to prosecute Thomas, i.e., a video showing that he resisted a lawful arrest, his malicious prosecution claim fails. *See Newman v. Twp. of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014) (holding that evidence of probable cause for a prosecution "readily defeats a malicious prosecution claim").

Regarding Doyle, Thomas alleges only that Doyle "participated" in the arrest and "had a duty to intervene" to stop the prosecution, but failed to do so. (*Id.* at PageID.13–14.) There is no Fourth Amendment violation for participating in a lawful arrest. And since McCabe did nothing to violate Thomas' Fourth Amendment rights, Doyle had no duty to intervene. *See Jacobs v. Alam*, No. 15-10516, 2017 U.S. Dist. LEXIS 134810, at *23–24 (E.D. Mich. August 23, 2017) ("By definition, if there was no [constitutional violation], then there can be no failure to intervene." (citing

14

*Abdullahi v. City of Madison*, 423 F.3d 763, 767-68 (7th Cir. 2005))). So Thomas' claim against Doyle fails as well.

## C.

Having found that neither McCabe nor Doyle violated Thomas' Fourth Amendment rights to be free from false arrest or malicious prosecution, it follows that no clearly established law was violated.

## IV.

Because there was probable cause to support Thomas' arrest and prosecution, the Court finds that McCabe and Doyle are entitled to qualified immunity. So the Court GRANTS Defendants' motion for judgment on the pleadings (ECF No. 11) and DISMISSES the case with prejudice. A separate judgment will follow.

SO ORDERED.

Dated: November 30, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE